IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RUSSELL CARRINGTON,<br>*Petitioner*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>*Defendant*. | Civil No. ELH-26-4782<br><br>(Related Cases<br>Criminal No. ELH-13-151 (D. Md)<br>Civil No. ELH-18-1910 (D. Md)<br>Civil No. ELH-19-3587) (D. Md.) |

**MEMORANDUM**

Petitioner Russell Carrington, who is now self-represented, has filed correspondence (ECF 1) and exhibits (ECF 1-1), which the Court has construed as a Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241 (the "Petition"). *See also United States v. Carrington*, ELH-13-0151 (D. Md.) ("Criminal Case"), ECF 2315 (same).[1]

In sum, defendant is currently serving a sentence of eighteen years of imprisonment that was imposed by the late Judge J. Frederick Motz on March 27, 2005. Criminal Case, ECF 1584. He complains that the Bureau of Prisons ("BOP") has failed to award him proper credit for his time in pretrial detention, beginning on December 9, 2013. *See* Criminal Case ECF 586; ECF 2315-1. Carrington is presently confined at a federal correctional facility in Pennsylvania.

Although this matter is now docketed as a civil case, it is intertwined with defendant's Criminal Case. Therefore, I shall sometimes refer to Carrington as the defendant or the petitioner.

At this time, no hearing is necessary. This is because I cannot reach the merits, based on this Court's lack of jurisdiction. Instead, I shall transfer the case to the United States District Court for the Middle District of Pennsylvania.

---

[1] The documents in this case were initially filed in the Criminal Case. But, upon review, I directed the Clerk to open a habeas case.

## I. Factual and Procedural Background[2]

Carrington was one of 44 defendants in the Criminal Case. He was indicted in 2013 on charges that included Racketeering Conspiracy under the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and conspiracy to distribute and possess with intent to distribute controlled dangerous substances. Criminal Case, ECF 418 (Superseding Indictment); *id.*, ECF 869 (Second Superseding Indictment). The defendants generally consisted of two groups: members of the Black Guerilla Family ("BGF"), some of whom were detained at the Baltimore City Detention Center ("BCDC"), and corrupt correctional officers who worked at BCDC and helped to facilitate the criminal enterprise. BGF is a street and prison gang and defendant was a member of the gang.

The criminal charges were rooted in a "sprawling criminal enterprise" at BCDC from 2007 through 2013, led by the BGF, involving narcotics, tobacco, and cell phones. *United States v. Carrington*, 700 Fed. App'x 224, 226 (4th Cir. 2017). The BCDC was primarily a facility for pretrial detainees charged with offenses under Maryland law. Carrington had been an inmate at BCDC.

---

[2] The Criminal Case was assigned to me at the time of indictment. *See* ELH-13-0151. Ultimately, there were 44 defendants in the case. I ruled on numerous pretrial motions, took many guilty pleas, conducted sentencing proceedings for those defendants who pled guilty, and handled a remand by the Fourth Circuit as to one defendant with respect to sentencing. Judge Motz presided at the trial of eight defendants, including Carrington. And, he imposed sentence on Carrington.

The facts concerning the underlying charges and the evidence at trial are not relevant here. Therefore, the Background section is largely limited to information that provides context and is otherwise pertinent to Carrington's submission. *See* ECF 1.

On December 9, 2013, Carrington had an initial appearance and arraignment before U.S. Magistrate Judge Beth Gesner. Criminal Case, ECF 581; ECF 582. I have reviewed the transcript of those proceedings. *Id.*, ECF 2314 (Transcript of 12/9/13).

At that time, the prosecutor advised Judge Gesner that Carrington was serving a State sentence. Criminal Case, ECF 2314 at 5. According to the government, Carrington had "quite a bit of time left on that sentence . . . ." *Id.* In contrast, the government reported that Carrington claimed he had "only one month to go" on his State sentence. *Id.* at 6.

Judge Gesner advised Carrington that he had the right to be sent back to the State to continue to serve his State sentence. *Id.* at 7. Carrington indicated that he understood. *Id.* Judge Gesner asked Carrington whether he wanted to return to the State to serve the rest of his sentence. *Id.* at 8. He advised, "Yes, ma'am." *Id.*

Also on December 9, 2013, Judge Gesner entered an "Order of Detention By Agreement." Criminal Case, ECF 586. In addition, on the same date, Carrington, his lawyer, and Judge Gesner executed a "Waiver of Right Not To Be Returned To Original Place of Imprisonment Prior to Trial In Federal Court." *Id.*, ECF 585. Referring to Carrington, the document states, in part: "I have previously been sentenced to serve a term of imprisonment by a state court in the State of Maryland. I have not completed service of that sentence."

This Court is unaware of the date when defendant completed service of the Maryland sentence that was under discussion before Judge Gesner. But, Carrington's Amended Presentence Report ("PSR"), Criminal Case, ECF 1588, reflects, *inter alia*, that he had two felony convictions with sentences of incarceration for which he had a "Mandatory Release" date of September 23, 2013. *See id.*, ¶¶ 41, 43. A review of the PSR does not reveal that Carrington was serving any State sentence after that date.

As noted, Carrington was one of eight defendants who proceeded to a jury trial, at which Judge Motz presided. The trial began on November 17, 2014. Criminal Case, ECF 1213. On February 5, 2015, the jury returned a verdict of guilty as to Carrington and four other defendants. Criminal Case, ECF 1425; ECF 1426. Two of the five convicted defendants were BGF gang members who had been inmates at BCDC and three were correctional officers who worked at BCDC. In particular, Carrington was convicted of racketeering conspiracy (Count One) and conspiracy to distribute drugs (Count Two), *i.e.*, oxycodone, buprenorphine, marijuana, and alprazolam. *Id.*

The original Presentence Report was filed on March 16, 2015. Criminal Case, ECF 1558. The amended PSR was filed on March 30, 2015, and is docketed in the Criminal Case at ECF 1588. The corrections are not material here.

Carrington's sentencing was held on March 27, 2015. Criminal Case, ECF 1584. The PSR determined that Carrington had an offense level of 34 after applying enhancements to his base offense level. Alternatively, defendant had an offense level of 34 because he qualified as a career offender. And, defendant had a criminal history category of VI, based on his criminal history points and also because he was a career offender. *See id*., ECF 1558, ¶¶ 13-24, 44-47.

Judge Motz found that defendant had an offense level of 34 and a criminal history category of VI. Criminal Case, ECF 1901 (Sentencing Transcript), at 17; *id.*, ECF 1609 (Statement of Reasons). Therefore, Carrington had an advisory sentencing guidelines range of 262 to 327 months of imprisonment. *Id.*, ECF 1558, ¶ 108.

The government sought a total sentence of 300 months (25 years) of incarceration. Criminal Case, ECF 1901 at 6. However, the district court varied downward on the basis of the factors under 18 U.S.C. § 3553(a), and imposed a total sentence of 210 months (18 years) of

imprisonment. *Id.*, ECF 1608 (Judgment, docketed April 8, 2015); *id.*, ECF 1609 (Statement of Reasons); ECF 1901 at 17.

The Sentencing Transcript (Criminal Case, ECF 1901) is noteworthy for the absence of any discussion of any pretrial credit to which Petitioner was entitled. Moreover, the Judgment (*id.*, ECF 1608) makes no reference to a recommendation for pretrial credit. Nor does it reflect that the sentence was to run concurrent with or consecutive to any other sentence. This suggests that, by the time of sentencing, Petitioner was in federal custody.

On March 28, 2015, Petitioner filed a Notice of Appeal to the Fourth Circuit. Criminal Case, ECF 1586. In a consolidated appeal, involving the other defendants convicted at trial, the Fourth Circuit affirmed Petitioner's convictions and sentence by way of an opinion issued on July 25, 2017. *Id.*, ECF 1992; *see United States v. Carrington, et al.*, 700 Fed. App'x 224 (4th Cir. 2017). The Fourth Circuit concluded that the evidence was sufficient to support Petitioner's racketeering conviction and that the district court did not err in admitting certain coconspirator testimony. *Id*. at 232 n. 2.[3]

With his correspondence (ECF 1), Petitioner has submitted the "Sentence Monitoring Computation Data" that he received in response to his inquiry. Criminal Case, ECF 2315-1 at 3-4. It reflects that sentence computation began on June 19, 2015. *Id.*at 4. Moreover, it indicates that Carrington received 176 days of "Prior Credit," from December 25, 2014 through June 18, 2015. *Id.*

[3] As to codefendant Joseph Young, the Court upheld the convictions but vacated the sentence and remanded for a new sentencing.

Petitioner also submitted correspondence he received in response to his inquiry to the Designation and Sentence Computation Center. Criminal Case, ECF 2315-1 at 7. The Management Analyst stated, *id.*:

> A review of your records indicates that you were in primary state custody for multiple case numbers and sentences until your release into exclusive, primary federal custody on June 19, 2015 [Commencement of Sentences is governed by 18 U.S.C. § 3585(a)]. You are receiving all appropriate jail credit. No changes are warranted to your sentence computation.

The Court is not in possession of documents that conclusively indicate when defendant's State sentence ended or when he entered federal custody.

## II. Discussion

### A.

A federal sentence to a term of imprisonment begins "on the date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). However, under federal law, in certain circumstances, a defendant is also entitled to credit for time spent in pretrial detention. *See* 18 U.S.C. § 3585(b).

Nevertheless, under federal law, a federal prisoner may not receive credit against his federal sentence for earlier time spent in custody if that time has been credited to another sentence. *See* 18 U.S.C. § 3585(b); *United States v. Soles*, 336 Fed. App'x 287, 290 (4th Cir. 2009); *see also* *United States v. Tucker*, 321 Fed. App'x 307, 309 (4th Cir. 2009) (rejecting prisoner's claim for sentence reduction under § 3585(b) because record showed he already received credit for time served against state sentence, and therefore was not entitled to reduction of his federal sentence for that same time); *Sites v. Bureau of Prisons*, RDB-06-2145, 2006 WL 5164804 (D. Md. Dec. 21, 2006) (denying prisoner's claim for sentence reduction pursuant to § 3585(b) because he "received credit for that period of time against his state sentence").

Prior custody credit is governed by 18 U.S.C. § 3585(b). It provides (emphasis added):

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> **that has not been credited against another sentence.**

In other words, federal law does not permit double-counting, *i.e.*, the award to an inmate of credit on a federal sentence for time that has already been credited against a state sentence. *See* 18 U.S.C. § 3585(b)(2); *see United States v. Wilson*, 503 U.S. 329, 337 (1992) ("Congress made clear that a defendant could not receive double credit for his detention time"); *United States v. Brown*, 977 F.2d 574 (4th Cir. 1992) (concluding that a defendant may not receive credit against his federal sentence for prior custody time that has been credited against another sentence).

**B.**

Any claim of error with regard to the execution of defendant's sentence, as opposed to a challenge to the validity of the sentence, must be filed under 28 U.S.C. § 2241. *United States v. Little*, 392 F.3d 671, 679–80 (4th Cir. 2004); 28 U.S.C. § 2241(a) (stating that a "request for sentencing credit is properly brought under § 2241"); *see also United States v. Poole*, 531 F.3d 263, 270-71, 274-75 (4th Cir. 2008) (concluding that a district court lacks jurisdiction to address a § 2241 petition that is not brought in the district of the petitioner's custodian); *Adams v. United States*, 372 F.3d 132, 135 (2d Cir. 2004) ("In a § 2241 petition a prisoner may seek relief from such things as the administration of his parole, computation of his sentence by parole officials, disciplinary actions taken against him, the type of detention, and prison conditions in the facility

where he is incarcerated."). To the extent Petitioner challenges the calculation of his sentence, his challenge is properly considered under 28 U.S.C. § 2241.

Congress has delegated to the United States Attorney General the authority to calculate a federal prisoner's period of incarceration and to provide credit for time served. In turn, the Attorney General exercises that duty through the BOP. *See Wilson*, 503 U.S. at 334-35 (citing 18 U.S.C. § 3585). Therefore, it is the province of the Attorney General, acting through the BOP, to determine what, if any, credit to award Carrington for the time he spent in custody prior to his sentencing. *See* 18 U.S.C. § 3583(b); *see also Wilson*, 503 U.S. at 333-35; *Harris v. United States*, 3:12-cv-850-RJC, 2015 WL 8366822, at *4 (W.D.N.C. 2015)).

Where an inmate has been sentenced by federal and state authorities, the sovereign that arrested him first acquires and maintains "primary jurisdiction" until the sentence imposed by that sovereign has been satisfied. *See United States v. Evans*, 159 F.3d 908, 912 (4th Cir. 1998) (explaining principle of primary jurisdiction as set forth in *Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922)). But, this Court lacks information needed to determine whether or when defendant was in State custody during the pendency of the federal charges.

In any event, and of import here, a claim that concerns the calculation of sentence must be filed in the district of confinement. *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004). Petitioner is currently incarcerated in Pennsylvania. Therefore, a habeas petition under § 2241 must be filed in the district in which the prisoner is confined. *In re Jones*, 226 F.3d 328, 332 (4th Cir. 2000); 28 U.S.C. § 2241(a). It follows that this Court lacks jurisdiction to resolve the habeas claim. *See*

*Poole*, 531 F.3d at 270-71, 274-75 (concluding that a district court lacks jurisdiction to address a § 2241 petition that is not brought in the district of the petitioner's immediate custodian).[4]

Accordingly, I conclude that this Court lacks jurisdiction with regard to this matter. Because defendant is a prisoner at U.S. Penitentiary Canaan, located in Waymart, Pennsylvania, I shall transfer the case to the United States District Court for the Middle District of Pennsylvania.

An Order follows.

Date: November 24, 2026

/s/
Ellen L. Hollander
United States District Judge

[4] Petitioner must exhaust administrative remedies prior to seeking judicial review of time credit calculations. *See Wilson*, 503 U.S. at 335; *see also United States v. Woods*, 888 F.2d 653, 654 (10th Cir. 1989) (explaining that a habeas petitioner's suit is not ripe until administrative remedies have been exhausted). The exhaustion doctrine promotes a number of goals: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761 (3d Cir. 1996).

I have been advised by counsel for the BOP's Mid-Atlantic Region that defendant recently filed a claim pursuant to the administrative remedy procedure.